Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A Professional Corporation**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112; Fax: (213) 402-8622
Emails: dgastelum@gastelumfirm.com
sestradavillela@gastelumfirm.com

Attorneys for Plaintiffs,
ESTATE OF HUNTER BERGNER, *et al.*

Christian Contreras, SBN 330269
Email: CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF HUNTER BERGNER, by and through successor in interest, PATRICIA COLET; PATRICIA COLET, individually, L.B.1, a minor, individually; L.B.2, a minor, individually; S.B., a minor, individually, by and through their Guardian ad Litem PATRICIA COLET,

Plaintiffs,

v.

SAN MATEO COUNTY SHERIFF'S OFFICE; a public entity; SAN MATEO COUNTY, a public entity; SHERIFF CHRISTINA CORPUS, in her individual capacity; and DOES 1-20, individually, jointly and severally,

Defendants.

**CASE NO.: 3:24-cv-8596**

**COMPLAINT FOR DAMAGES**

1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);
2. Failure to Provide Medical and Mental Health Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);
3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);
4. Municipal Liability (Monell, 42 U.S.C. § 1983);
5. Supervisory Liability (Monell, 42 U.S.C. § 1983);
6. Negligence – Wrongful Death;
7. Negligence – Medical Malpractice;
8. Violation of California Government Code §845.6;
9. Violation of California Civil Code §52.1 (Tom Bane Act);
10. Declaratory Relief (28 U.S.C. § 2201)

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF HUNTER BERGNER, by and through successor in interest, PATRICIA COLET; PATRICIA COLET, individually, L.B. 1, a minor, individually; L.B. 2, a minor, individually; S.B., a minor, individually, and allege as follows:

**INTRODUCTION**

1.     This civil rights action seeks to vindicate the unjust in-custody death of Hunter Bergner at the Defendant SAN MATEO COUNTY SHERIFF'S OFFICE (hereinafter also "SMSO"), Maguire Correctional Facility on March 15, 2024. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.     HUNTER BERGNER was just 46 years old when his life was tragically taken away. HUNTER BERGNER was a beloved husband to Patricia Colet, affectionately known as "Carrie," and a devoted father to L.B.1, L.B.2, and S.B. HUNTER BERGNER death has left a void that words can scarcely capture, a pain shared not just by his family but by all who knew him. At the time of his passing, HUNTER BERGNER was a pretrial detainee, a man legally presumed innocent, waiting for his day in court to defend himself.

3.     HUNTER BERGNER had a deep and abiding love for California, the state where he was raised and lived until his death. A true North Californian at heart, he carried a deep pride for his roots. He was avid of the San Francisco Giants fan and of the Golden State Warriors. Known for his outgoing nature and engaging personality, HUNTER

BERGNER had a remarkable ability to light up any room he entered with is ever-present smile, as infectious as his joy for life.

4.    HUNTER BERGNER's was not only caused by the deliberate indifference in the violation of his Fourteenth Amendment rights, but also based upon the systemic unconstitutional customs and practices within Defendants SMSO and SAN MATEO COUNTY.

5.    Indeed, since 2023, Defendant SAN MATEO COUNTY'S correctional facilities, including the SAN MATEO COUNTY SHERIFF'S OFFICE's Maguire Correctional Facility (hereinafter "MCF") and the Maple Street Correctional Center (hereinafter "MSCC") (hereinafter collectively "COUNTY Jails"), have resulted in eleven (5) in-custody deaths. HUNTER BERGNER's death is one of the five (5) suicide deaths within the COUNTY Jails since the 2023 calendar year.

6.    Long before HUNTER BERGNER's death, each of the individually named Defendants from SAN MATEO COUNTY and SAN MATEO COUNTY SHERIFF'S OFFICE knew that of and actively contributed to the great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails in violation of the Fourteenth Amendment.

7.    The individual defendants named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths, yet consciously proceeded with their course of conduct despite the foreseeable outcome of constitutional violations.

8.    Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails.  Thus, by the time HUNTER BERGNER was taken into custody and placed at the Maguire Correctional Facility, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in HUNTER BERGNER's death on March 15, 2024.

**JURISDICTION AND VENUE**

9.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10.     This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

11.     Venue is proper within the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

**PENDANT CLAIMS**

12.     Plaintiffs' tort claims, prepared by a different law office, were received by the Board of Supervisors on April 22, 2024 and presented to the Board on May 21, 2024. The government claims were rejected on May 30, 2024.

13.     Plaintiffs' current counsel presented tort claims on July 18, 2024 and also presented amended government claims presented on August 30, 2024. The amended and controlling government tort claims were rejected October 23, 2024. The tort claims presented by current Plaintiffs' counsel are the controlling tort claims.

14.     Accordingly, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

15.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

**PARTIES**

**A. Plaintiffs**

16.     Decedent HUNTER BERGNER (hereinafter also "Decedent") was a 46-year-old loving husband to Patricia "Carrie" Colet and father of L.B.1, L.B.2, and S.B..

1  At the time of his death, he was a pretrial detainee who resided in the County of San

2  Mateo, California. The claims made by Plaintiff ESTATE OF HUNTER BERGNER,

3  are brought by the successors in interest and individuals, Patricia "Carrie" Colet (lawful

4  wife), L.B.1, L.B.2, and S.B (natural born children).

5        17.    Plaintiff PATRICIA COLET, is and was, at all times relevant hereto, a

6  resident of the County of San Mateo, California, and was the lawful wife of decedent

7  HUNTER BERGNER. Plaintiff brings these claims pursuant to California Code of

8  Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and

9  wrongful death actions. Plaintiff also brings her claims individually and on behalf of

10  decedent HUNTER BERGNER on the basis of 42 U.S.C. §§ 1983 and 1988, the United

11  States Constitution, federal and state civil rights law and California law. Plaintiff also

12  brings these claims as a Private Attorney General, to vindicate not only his rights, but

13  others' civil rights of great importance.

14        18.    Plaintiffs L.B.1, L.B.2, and S.B., are and were, at all times relevant hereto,

15  a resident of the County of San Mateo, California, and was the natural born children of

16  decedent HUNTER BERGNER. Plaintiffs bring these claims pursuant to California

17  Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for

18  survival and wrongful death actions. Plaintiffs L.B.1, L.B.2, and S.B., are minors and

19  also bring their claims through their natural mother and guardian ad litem, PATRICIA

20  COLET. Plaintiffs also brings his claims individually and on behalf of decedent

21  HUNTER BERGNER on the basis of 42 U.S.C. §§ 1983 and 1988, the United States

22  Constitution, federal and state civil rights law and California law. Plaintiff also brings

23  these claims as a Private Attorney General, to vindicate not only his rights, but others'

24  civil rights of great importance.

25  ///

26  ///

27  ///

28  ///

**B. Defendants**

19.     Defendant SAN MATEO COUNTY (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant SAN MATEO COUNTY SHERIFF'S OFFICE, also a separate public entity[1], which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including SMSO employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through SMSO, is and was responsible for ensuring the protection and safety of all persons incarcerated at the SMSO correctional facilities, including the Maguire Correctional Facility and the Maple Street Correctional Center ("COUNTY Jails").

20.     Defendant CHRISTINA CORPUS ("SHERIFF CORPUS"), at all times mentioned herein, was the Sheriff of the SAN MATEO COUNTY SHERIFF'S OFFICE, the administrator of the COUNTY Jails, including MCF, and the custodian of the inmates within it; and the ultimate policy maker for the SMSO and the COUNTY Jails. SHERIFF CORPUS and her custody staff, or those working in the jail, DOES 1-20, were peace officers, sergeants, captains, lieutenants, commanders and undersheriffs, doctors, nurses and/or civilian employee agents, policy makers and/or agents and representatives of the COUNTY and the SMSO, as well as employees, agents and representatives of said Defendants. At all times relevant hereto, each of those named as DOES, were acting within the course and scope of their employment which was incidental to Defendants COUNTY and the SMSO's enterprise, and the wrongful acts hereinafter described flow from the very exercise of their authority. They

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.).

are sued in their individual capacities. SHERIFF CORPUS is sued in her personal and individual capacity as a supervisory official for her own culpable action or inaction in the training, supervision, or control of her subordinates, or for her acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed a reckless or callous indifference to the rights of others. SHERIFF CORPUS' affirmative conduct involves her failure to ensure enforcement of policies, rules, or directives that set in motion a series of acts by others which he knew or reasonably should have known, would cause others to inflict the constitutional injury.

21. Defendants SAN MATEO COUNTY, SAN MATEO COUNTY SHERIFF'S OFFICE, and SHERIFF CORPUS will hereinafter be referred to as the COUNTY DEFENDANTS.

22. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-20 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

23. The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1-20 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1-20 include individual law enforcement personnel and medical personnel employed by the SMSO, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1-20 were and still are residents of the County of San Mateo, California. DOES 1-20 are sued in both their individual and official capacities.

**COMPLAINT FOR DAMAGES**

24.     At all relevant times, DOES 11-20 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 11-20 were acting under color of law within the course and scope of their duties as employees for the SMSO and/or the COUNTY. They had supervisorial authority over DOES 1-20, and the COUNTY employees at the COUNTY Jails. DOES 11-20 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

25.     Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

26.     Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent HUNTER BERGNER's constitutional rights and other harm.

27.    Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

28.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

29.    In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

30.    On Friday, March 15, 2024, at approximately 3:16 p.m., Correctional Officers assigned to the Maguire Correctional Facility discovered HUNTER BERGNER hanging from a light fixture in his jail cell. HUNTER BERGNER used his bedsheets to create a noose and hung himself.

31.    Subsequently, upon information and believe, Correctional Officers responded to HUNTER BERGNER's jail cell and immediately began administering CPR and lifesaving measures until paramedics arrived a short time later. Despite their efforts, HUNTER BERGNER died at the facility.

32.    Upon information and belief, HUNTER BERGNER had been experiencing a medical emergency, including a mental health breakdown which was a catalyst for the suicide, for an appreciable amount of time prior to his death.

33.    Indeed, on March 15, 2024, HUNTER BERGNER was despondent, in despair and hopeless about a potential one year sentence for the crime he was accused of committing.

34.    HUNTER BERGNER was also in a high risk period given that at the time of his death, HUNTER BERGNER was only in custody for a week. It is undisputed that the initial incarceration period is a high risk period for suicide.

///

///

35.     HUNTER BERGNER was in custody for a minor firearms criminal charge. However, despite the crime being a relatively minor offense, HUNTER BERGNER exhibited suicide red flags by expressing hopelessness and despair.

36.     Upon information and belief, HUNTER BERGNER expressed his hopelessness and despair to SMSO custody and medical staff. SMSO custody and medical staff should have taken the proper precautions to prevent HUNTER BERGNER's expression of suicidality.

37.     Despite the obvious red flags of suicide that HUNTER BERGNER exhibited, SMSO custody and medical staff were deliberately indifferent to HUNTER BERGNER's rights and failed to take any precautions to attempt to stop HUNTER BERGNER's suicide. Therefore, SMSO custody and medical staff violated HUNTER BERGNER's constitutional rights and caused his demise.

38.     Furthermore, upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, HUNTER BERGNER's dire need for emergency medical intervention went unnoticed by the SMSO custody and medical staff, who were responsible for monitoring and ensuring the welfare of all inmates, including HUNTER BERGNER.

39.     In fact, upon information and belief, SMSO custody staff failed to perform timely Title 15 welfare and safety checks when HUNTER BERGNER decided to commit suicide. If SMSO custody staff were to have conducted Title 15 welfare and safety checks, HUNTER BERGNER's suicide could have been prevented.

40.     HUNTER BERGNER's toxicology test revealed that HUNTER BERGNER had no positive findings for any narcotics or illicit drugs.

41.     HUNTER BERGNER was only forty-six (46) years old when he died on March 15, 2024, while he was in custody at the Maguire Correctional Facility.

42.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

///

**COMPLAINT FOR DAMAGES**

1
2

### FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

3    43.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of*
4  *City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained
5  by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't*
6  *of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that
7  [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the
8  municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts
9  to deliberate indifference to the plaintiff's constitutional right; and, (4) that the
10  policy/custom/practice is the moving force behind the constitutional violation.
11  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The
12  policy/custom/practice "need only cause the constitutional violation; it need not be
13  unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994).
14  Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice
15  or policy behind the violation of rights; (2) a deliberately indifferent omission, such as
16  a failure to train or failure to have a needed policy; and (3) a final policy-maker's
17  involvement in or ratification of the conduct underlying the violation of rights. *Clothier*
18  *v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

19    **A. Defendant Supervisors Had Knowledge of Inadequacy and Delivery of**
20       **Mental Health Care at the San Mateo County Jails and Failed to Take**
21       **Corrective Action.**

22    44.    Prior to March 15, 2024, high level COUNTY supervisors, including
23  SHERIFF CORPUS, knew or should have known of a history of years of notice of
24  ongoing failure to provide inmates indicated and timely reasonable medical/mental
25  health care, knew or should have known of inadequate and/or incompetent staffing,
26  insufficient and inadequate cells and beds, incompetent and inadequate provision of
27  health care and delivery thereof, denying access to outside hospitals or other mental
28  health programs, failure to take corrective measures, including ignoring judicial orders

to abate or take corrective action regarding medical and mental health care to inmates and detainees, notice from quality assurance and death reviews, from litigation alleging failure to provide reasonable medical and mental health care, and from publications of endemic, ongoing and unabated risks of injury or death to inmates. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to known ongoing hazards to ill detainees and their failure to take corrective action.

45.    As a preamble, Since Corpus took over in January 2023, five pre-trial detainees have died either of drugs or suicide in the San Mateo County Jails. The deaths include two (2) suicides, one (1) homicide, and two (2) natural cause deaths.[2]

46.    HUNTER BERGNER's death is one of five (5) deaths within the COUNTY Jails in period between January 7, 2023, and March 15, 2024.

47.    The Defendants' deliberate indifference towards inmates suffering from mental health issues has been an ongoing issue for many years. In 2004, the San Mateo County Civil Grand Jury, mandated by California Penal Code to assess the condition and management of detention facilities within the county, identified significant inadequacies in mental health resources at the county jails. At the Maguire Correctional Facility, 16% of inmates required mental health services, with psychotropic medication costs totaling $69,340 in the preceding quarter, while at the Women's Correctional Center (WCC), 18% of inmates were seriously mentally ill, and 25% were on psychotropic medications. The jails faced severe challenges in managing these cases due to overcrowding, limited staffing, and insufficient infrastructure. Behavioral issues, often exacerbated by substance withdrawal and other mental health conditions, further strained the already overburdened staff and resources. The Grand Jury emphasized the urgent need for enhanced mental health facilities, specialized housing,

---

[2] SMSO website, in custody deaths reporting page:
https://www.smcsheriff.com/deaths-in-custody.

**COMPLAINT FOR DAMAGES**

and improved staff training to address the growing demand for mental health care in these jails.[3]

48.    Yet, despite these findings, there remains a severe lack of oversight, leading to preventable deaths in county jails.

49.    On January 7, 2023, Maycarla Sulapas, age 25, a pretrial detainee died as a result of drugs, while in custody of the San Mateo County Sheriff's Office.

50.    On October 20, 2023, Peter Edward McLaughlin, age 64, a pretrial detainee died while in custody of the San Mateo County Sheriff's Office.

51.    On October 21, 2023, Ronald Simmons, age 34, a pretrial detainee died by suicide while in custody of the San Mateo County Sheriff's Office.

52.    On January 14, 2024, Anthony Harding, age 23, pretrial detainee died while in custody of the San Mateo County Sheriff's Office.

53.    On March 15, 2024, HUNTER BERGNER, a male, age 46 died by suicide while in custody of the San Mateo County Sheriff's Office. HUNTER BERGNER's suicide could have easily been prevented if the SMSO had adequate procedures in place to prevent such death. As it is, the current procedure, or lack thereof, is insufficient to prevent such deaths.

**B. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails, Contributing to Inmate Deaths**

54.    Defendant SHERIFF CORPUS, through her supervision of the COUNTY's MCF employees, were responsible for the safety and health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

a.    Staffing for the jail's medical and mental health units;

b.    Administrative structure, medical direction and operational oversight for the medical and mental health units;

c.    Oversight of the day-to-day operations of the health services programs at

---

[3] San Mateo County Civil Grand Jury Report:
https://sanmateo.courts.ca.gov/system/files/jailsvisit_31_final.pdf

the jail;

   d.  Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

   e.  Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

   f.  Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

   g.  Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

   h.  Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

55. Defendants COUNTY, SMSO, SHERIFF CORPUS, and the COUNTY custody, medical and mental health staff, and each of them, had been on notice for years that their provision of medical and mental health treatment to inmates at the COUNTY Jails was inadequate and resulted in needless harm and death.

56. Defendants COUNTY, SMSO, SHERIFF CORPUS, and the COUNTY custody, medical and mental health staff, and each of them, were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths.

57. Based on the aforementioned, Defendants COUNTY, SMSO, SHERIFF CORPUS, and the COUNTY custody, medical and mental health staff, and each of them, knew of the dangers that posed a risk to decedent HUNTER BERGNER's safety,

1  yet disregarded these dangers resulting in his death.

2  ## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

3  **(Against individual Defendants SHERIFF CORPUS and DOES 1-20)**

4  58.    Each Defendants' conduct as alleged herein was done with reckless

5  disregard for human life, oppression, and malice.

6  59.    Long before HUNTER BERGER's death, Defendants SHERIFF

7  CORPUS and DOES 1-20 knew that there existed a great indifference to the safety and

8  protection of the inmates who were in the government's custody within the COUNTY

9  Jails.

10  60.    Defendants SHERIFF CORPUS and DOES 1-20 were repeatedly put on

11  notice of the great dangers which existed within the COUNTY Jails through the long

12  history of in-custody deaths, as detailed in Section VI above.

13  61.    Despite this long history of complete disregard to inmate safety and

14  protection, Defendants SHERIFF CORPUS and DOES 1-20 have deliberately failed to

15  take even modest actions to prevent in-custody deaths at the COUNTY Jails which

16  have for a very long time been infested with endemic, ongoing and unabated risks of

17  injury or death to inmates.

18  62.    The Defendant officers, and each of them, acted with malice and

19  oppression and with a conscious disregard for Plaintiffs' rights, making the individual

20  defendants, including DOES 1-20, liable for punitive damages.

21  ## FIRST CLAIM FOR RELIEF

22  **Failure to Protect from Harm,**

23  **Violation of the Fourteenth Amendment to the United States Constitution**

24  **(Survival Action – 42 U.S.C. § 1983)**

25  **By Plaintiff Estate of HUNTER BERGNER As Against DOES 1-20**

26  63.    Plaintiff realleges and incorporates herein by reference each of the

27  preceding paragraphs of this complaint, and any subsequent paragraphs.

28  ///

64.     Pretrial detainees such as HUNTER BERGNER have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

65.     By the actions and omissions described above, Defendants DOES 1-20, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent HUNTER BERGNER, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: HUNTER BERGNER's right to be protected from harm while in custody as secured by the Fourteenth Amendment.

66.     As a predicate fact, Defendants COUNTY, SMSO and DOES 1-20 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent HUNTER BERGNER's position such that the consequences of their decisions were foreseeable.

67.     Each Defendant could have taken action to prevent unnecessary harm to decedent HUNTER BERGNER but refused or failed to do so in violation of his Fourteenth Amendment rights.

68.     Defendants DOES 1-20, and each of them, made various intentional decisions regarding HUNTER BERGNER's condition when he was confined in the COUNTY Jails, including MCF. Given HUNTER BERGNER's mental state and the high risk period for suicide, Defendants' placement of HUNTER BERGNER in certain conditions placed HUNTER BERGNER at substantial risk of suffering serious harm, including death.

69.     Instead of ensuring that HUNTER BERGNER could not self-mutilate or self-harm, Defendants did not take any reasonable available measures to abate or reduce the risks HUNTER BERGNER faced, even though any reasonable person in the circumstances would have appreciated the high degree of risk involved, or at the very least done something to protect HUNTER BERGNER from harm.

**COMPLAINT FOR DAMAGES**

70.    Given such failures, the consequences of the Defendant's conduct were obvious and by not taking such measures, HUNTER BERGNER suffered significant suffering and ultimately, died.

71.    The conduct of Defendants DOES 1-20, and each of them, was objectively unreasonable and deliberately indifferent given that they were aware of the consequences of HUNTER BERGNER's placement and the high risk period for suicide but proceeded with their course of conduct despite the obvious consequence of HUNTER BERGNER's death.

72.    Furthermore, by policy, procedure, and practice, Defendants COUNTY, SMSO and DOES 1-20 deliberately disregarded the hazards and risks posed to persons incarcerated at the MCF, as alleged above. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent HUNTER BERGNER at MCF.

73.    Defendants COUNTY, SMSO and DOES 1-20 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including MCF, were inadequate and gave rise to a substantial risk of serious harm.

74.    Defendants, including SHERIFF CORPUS and DOES 11-20, knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including MCF, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

75.    Defendants, including SHERIFF CORPUS and DOES 11-20, failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including MCF, who, upon information and belief, directed the deputies to violate the COUNTY's safety check policies. Defendants SHERIFF CORPUS and DOES 11-20 ratified their actions, and the practices used under their watch.

76.    Defendants, including SHERIFF CORPUS and DOES 11-20, failed to properly train and supervise SMSO custody, medical and mental health staff regarding policies, procedures, and practices necessary for the protection of inmates from risks

1  and hazards existing within the COUNTY Jails, including MCF.

2      77.    Defendants, including SHERIFF CORPUS and DOES 11-20, failed to

3  correct their policies, procedures, and practices despite notice of significant and

4  dangerous problems evidences deliberate indifference to the inmates in their care.

5      78.    Defendants, including SHERIFF CORPUS and DOES 11-20, ratified

6  Defendants DOES1-10's actions and inactions amounting to constitutional violations.

7      79.    Defendants DOES 1-20's failure to conduct the required safety check of

8  decedent HUNTER BERGNER's holding cell on the date of his death evidences

9  deliberate indifference to the risk of harm to decedent HUNTER BERGNER.

10     80.    Defendants SHERIFF CORPUS and DOES 11-20 ratified Defendants

11  DOES 1-20's failure to conduct safety checks.

12     81.    As a direct and proximate result of Defendants' conduct, the civil rights

13  of HUNTER BERGNER, as protected by the Fourteenth Amendment of the United

14  States Constitution were violated.    Further, decedent HUNTER BERGNER

15  experienced physical pain, severe emotional distress, and mental anguish, as well as

16  loss of his life and other damages alleged herein.

17     82.    Defendants subjected decedent HUNTER BERGNER to their wrongful

18  conduct, depriving Decedent of rights described herein, knowingly, maliciously, and

19  with conscious and reckless disregard for whether the rights and safety of Decedent

20  and others would be violated by their acts and/or omissions.

21     83.    As a direct and proximate result of Defendants' acts and/or omissions as

22  set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

23     84.    The conduct of Defendants entitles Plaintiff to punitive damages and

24  penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not

25  seek punitive damages against Defendant COUNTY.

26     85.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

27  U.S.C. § 1988, and other applicable United States and California codes and laws.

28  ///

**SECOND CLAIM FOR RELIEF**

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of HUNTER BERGNER As Against DOES 1-20**

86.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

87.    Pretrial detainees such as ANDREW BALDERRAMA have a Fourteenth Amendment due process right to needed medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

88.    As a predicate fact, Defendants COUNTY, SMSO and DOES 1-20 were on notice that their deficient policies, procedures, and practices alleged herein failed to provide medical care to an inmate in decedent HUNTER BERGNER's position such that the consequences of their decisions were foreseeable.

89.    By the actions and omissions described above, Defendants DOES 1-20, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent HUNTER BERGNER, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: Decedent's right to be free from deliberate indifference to HUNTER BERGNER's serious medical and mental health needs while in custody as secured by the Fourteenth Amendment.

90.    By the actions and omissions described above, Defendants DOES 1-20, as alleged herein, including but not limited to their failure to provide decedent HUNTER BERGNER with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate

1  indifference to HUNTER BERGNER's serious medical and mental health needs,
2  health, and safety.

3      91.    Instead of providing HUNTER BERGNER with the medical care she
4  needed, Defendants DOES 1-20, and each of them, denied HUNTER BERGNER
5  medical care and put him in substantial risk of suffering serious harm.

6      92.    Clearly, given that HUNTER BERGNER was suicidal, Defendants DOES
7  1-20, and each of them, did not take reasonable measures to reduce such risk even
8  though any reasonable person would have appreciated the high risks involved in the
9  situation. By failing to take such reasonable measures, it was obvious and foreseeable
10 that HUNTER BERGNER would commit suicide. Therefore, by not taking such
11 measures, Defendants DOES 1-20, and each of them, caused HUNTER BERGNER's
12 death.

13     93.    As a direct and proximate result of Defendants' conduct, the civil rights
14 of HUNTER BERGNER, as protected by the Fourteenth Amendment of the United
15 States Constitution were violated.    Further, decedent HUNTER BERGNER
16 experienced physical pain, severe emotional distress, and mental anguish, as well as
17 loss of his life and other damages alleged herein.

18     94.    Defendants subjected Decedent to their wrongful conduct, depriving
19 Decedent of rights described herein, knowingly, maliciously, and with conscious and
20 reckless disregard for whether the rights and safety of Decedent and others would be
21 violated by their acts and/or omissions.

22     95.    As a direct and proximate result of Defendants' acts and/or omissions as
23 set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

24     96.    The conduct of Defendants entitles Plaintiff to punitive damages and
25 penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not
26 seek punitive damages against Defendants COUNTY.

27     97.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42
28 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CLAIM FOR RELIEF

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs Patricia Colet, L.B.1, L.B.2, and S.B. As Against DOES 1-20**

98.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

99.    Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)*, overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). This liberty interest is rooted in the Fourteenth Amendment, which states in relevant part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

100.   The aforementioned acts and/or omissions of Defendants DOES 1-20 in being deliberately indifferent to decedent HUNTER BERGNER's protection, safety, and serious medical and mental health needs, violating decedent HUNTER BERGNER's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of HUNTER BERGNER deprived Patricia Colet, L.B.1, L.B.2, and S.B. of their liberty interests in the familial relationship in violation of their substantive due process rights as defined by the Fourteenth Amendment of the Constitution.

101.   All of the acts of Defendants DOES 1-20 and the persons involved were done under color of state law.

102.   The acts and omissions of each Defendant deprived Plaintiffs Patricia Colet, L.B.1, L.B.2, and S.B. of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth

Amendment by, among other things, depriving Plaintiffs of their rights to a familial relationship with decedent HUNTER BERGNER without due process of law by their deliberate indifference in denying HUNTER BERGNER protection and safety while incarcerated at MCF and access to medical care while suffering a medical emergency at MCF.

103.  The conduct of Defendants DOES 1-20, and each of them, shocks the conscience because placing HUNTER BERGNER in such a despicable condition, ignoring his medical condition, and refusing to provide medical was done with a purpose to harm unrelated to any law enforcement purpose or done with deliberate indifference. The conduct shocks the conscience in violation of the Fourteenth Amendment.

104.  Defendants DOES 1-20 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and SMSO. These include policies and longstanding practices or customs of failing to provide persons in custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

105.  In addition, the training policies of the COUNTY and SMSO were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as decedent HUNTER BERGNER, and thus Plaintiffs Patricia Colet, L.B.1, L.B.2, and S.B. of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

106.   Defendants COUNTY and SMSO's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs Patricia Colet, L.B.1, L.B.2, and S.B. and decedent HUNTER BERGNER by each individual Defendant's official policies and/or longstanding practices or customs are so closely related to HUNTER BERGNER's injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

107.   Defendants SHERIFF CORPUS, final policymakers for the COUNTY and SMSO, ratified the actions and omissions of Defendants DOES 1-20, all of whom were custody, medical and mental health staff at the COUNTY Jails, including MCF, in that they had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

108.   As a direct and proximate result of Defendants' conduct, the civil rights of HUNTER BERGNER, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent HUNTER BERGNER experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

109.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

110.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

111.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

112.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability

### (*Monell* - 42 U.S.C. § 1983)

### By Plaintiff Estate of HUNTER BERGNER

### As Against Defendants SAN MATEO COUNTY and SAN MATEO COUNTY SHERIFF'S OFFICE

113.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

114.    In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation.3 *Id.* at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691, 98 S.Ct. 2018.

115.    Furthermore, even where *Monell* claims are based upon the actions of individual officers, where those individual officers are exonerated on the basis of qualified immunity—as opposed to a special verdict finding that there was no constitutional injury—the *Monell* claims are not precluded. *See also Quintanilla v. City of Downey,* 84 F.3d 353, 355 (9th Cir. 1996); *see also Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

///
///
///
///
///

116.    At all times relevant hereto, the COUNTY custody, medical and mental health staff were required to adhere to and enforce the following policy and procedures:

a.      All COUNTY custody, medical and mental health staff must consider suicide prevention as one of the highest priorities of service within the correctional setting;

b.      All must work together to identify inmates at risk for suicide;

c.      All COUNTY custody, medical and mental health staff will have an outlined program for responding to suicidal individuals;

d.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods immediately upon admission to a facility;

e.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

f.      All COUNTY custody, medical and mental health staff must learn about an inmate's high-risk periods following the receipt of bad news regarding self or family;

g.      All COUNTY custody, medical and mental health staff must learn about an inmates' high-risk periods after suffering from some type or form of humiliation, rejection or abuse;

h.      All COUNTY custody, medical and mental health staff will review information of newly arriving inmates in this institution concerning issues related to suicide;

i.      All COUNTY custody, medical and mental health staff conducting the intake personal screen will be continuously alert to suicidal behavior;

j.      All COUNTY custody, medical and mental health staff will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

///

**COMPLAINT FOR DAMAGES**

k.  All COUNTY custody, medical and mental health staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient;

l.  All assessments of potentially suicidal inmates are to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

m.  Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting;

n.  Regular documented supervision should be maintained;

o.  Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing;

p.  Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another resident or in a dormitory and monitored by video camera by custody staff;

q.  The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

r.  The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s.  Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t.  The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u.  Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed suicides will be

26

in place;

v.    Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a completed suicide;

w.    The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

x.    A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

117.    However, Defendants DOES 2-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and SMSO, failed to follow the foregoing policies thereby constituting widespread and longstanding customs and practices which were the moving force behind the death of HUNTER BERGNER.

118.    The unconstitutional actions and/or omissions of Defendants DOES 2-10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and SMSO, on information and belief, were also pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and SMSO, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and SMSO:

a.    To deny inmates access to timely, appropriate, competent, and necessary care for serious medical and mental health needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical and mental health needs;

b.    To allow and encourage deputies doing regular cell checks on inmates, including inmates housed in safety cells and administrative segregation cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY's written policies and state law;

c.    To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

d.    To hire, retain and contract for obviously inadequate medical and mental health care for jail inmates and arrestees, including creating financial incentives for custody, medical and mental health staff not to send inmates with emergency medical needs to a hospital;

e.    To allow, encourage, and require medical and mental health care staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

f.    To fail to train custody staff that medical and mental health care staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

g.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised medical and mental health care staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization, including psychiatric hospitalization;

h.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

i.    To cover up violations of constitutional rights by any or all of the following:

   i.    By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and mental health care at the jail;

   ii.    By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful

**COMPLAINT FOR DAMAGES**

conduct by custody, medical and mental health staff;

iii.    By turning a blind eye to custody, medical and mental health staff who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the COUNTY Jails; and

iv.    By allowing, tolerating, and/or encouraging custody, medical and mental health staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, COUNTY personnel, custody, medical and mental health staff at the jail whereby an officer or member of the SMSO custody and/or medical/mental health staff does not provide adverse information against a fellow officer, or member;

k.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of inmates and detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

119.    The unconstitutional actions and/or omissions of Defendants DOES 1-20, as well as other officers employed by or acting on behalf of the COUNTY, and SMSO, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and SMSO, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and SMSO including SHERIFF CORPUS:

a.    To fail to properly and adequately hire, train, supervise, and monitor

custody, medical and mental health staff at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.    To cover up violations of constitutional rights by any or all of the following:

    i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

    ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

    iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.    To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

///

**COMPLAINT FOR DAMAGES**

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (f) above, with deliberate indifference to the rights and safety of inmates and detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

120.   Defendants COUNTY and SMSO, through their employees and agents, and through their policy-making supervisors, SHERIFF CORPUS and DOES 11-20, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1-20, and other COUNTY and SMSO personnel, with deliberate indifference to the constitutional rights of decedent HUNTER BERGNER, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

121.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY custody, medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and SMSO, including Defendants SHERIFF CORPUS and DOES 11-20. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and SMSO, and that such policymakers have direct knowledge of the fact that the death of HUNTER BERGNER was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/SMSO, and his rights to have access to medical care when suffering a medical emergency.

122.   Notwithstanding this knowledge, the authorized policymakers within the COUNTY and SMSO have approved of the conduct and decisions of Defendants DOES 1-20 in this matter and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of HUNTER

31

BERGNER. By so doing, the authorized policymakers within the COUNTY and SMSO have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF CORPUS and DOES 11-20, and other policy-making officers for the COUNTY and SMSO were and are aware of a pattern of misconduct and injury caused by COUNTY custody, medical and mental health staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY and SMSO.

123.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and SMSO were a moving force and/or a proximate cause of the deprivations of decedent HUNTER BERGNER's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent HUNTER BERGNER to their wrongful conduct, depriving decedent HUNTER BERGNER of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent HUNTER BERGNER, Plaintiffs and others would be violated by their acts and/or omissions.

124.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and SMSO, as described above, decedent HUNTER BERGNER suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and SMSO.

///

///

///

1

## FIFTH CLAIM FOR RELIEF

2

**Supervisory Liability Causing Constitutional Violations**

3

**(42 U.S.C. § 1983)**

4

**By Plaintiff Estate of HUNTER BERGNER**

5

**As Against Defendants SHERIFF CORPUS and DOES 11-20**

6       125.   Plaintiff realleges and incorporates herein by reference each of the

7   preceding paragraphs of this complaint, and any subsequent paragraphs.

8       126.   A supervisor can be held liable in his or her individual capacity under §

9   1983 only if (1) the supervisor personally participated in the constitutional violation,

10   or (2) there is a "sufficient causal connection between the supervisor's wrongful

11   conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir.

12   2011) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)).

13       127.   At all material times, SHERIFF CORPUS and DOES 11-20 had the duty

14   and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate,

15   investigate, staff, and discipline the other Defendants employed by their respective

16   agencies in this matter, as well as all employees and agents of the COUNTY and

17   SMSO.

18       128.   Defendants SHERIFF CORPUS and DOES 11-20 failed to properly hire,

19   train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective

20   employees of their agencies, including Defendants DOES 1-20, and other COUNTY

21   and SMSO personnel, with deliberate indifference to Plaintiffs', decedent HUNTER

22   BERGNER's, and others' constitutional rights, which were thereby violated as

23   described above.

24       129.   As supervisors, Defendants SHERIFF CORPUS and DOES 11-20 each

25   permitted and failed to prevent the unconstitutional acts of other Defendants and

26   individuals under their supervision and control, and failed to properly supervise such

27   individuals, with deliberate indifference to the rights to safety and protections while

28   incarcerated at MCF and the rights to the serious medical and mental health needs of

decedent HUNTER BERGNER. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent HUNTER BERGNER of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent HUNTER BERGNER of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent HUNTER BERGNER's rights, and in fact did cause the violation of decedent HUNTER BERGNER's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent HUNTER BERGNER's rights.

130.    The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and SMSO, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and SMSO, including Defendants SHERIFF CORPUS and DOES 11-20, respectively, with deliberate indifference to Plaintiff's, decedent HUNTER BERGNER's, and others' constitutional rights, which were thereby violated as described above.

131.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and SMSO personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and SMSO, including Defendants SHERIFF CORPUS and DOES 11-20. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF CORPUS and DOES 11-20 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent HUNTER BERGNER was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to her serious medical and mental health needs, as set forth above. Notwithstanding this

knowledge, on information and belief, Defendants SHERIFF CORPUS and DOES 11-20 have approved and ratified of the conduct and decisions of Defendants DOES 1-20 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of HUNTER BERGNER. By so doing, Defendants SHERIFF CORPUS and DOES 11-20 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF CORPUS and DOES 11-20 and other policymaking officers for the COUNTY and SMSO were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and SMSO custody, medical and mental health staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and SMSO.

132.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF CORPUS and DOES 11-20 were a moving force and/or a proximate cause of the deprivations of decedent HUNTER BERGNER's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

133.    Defendants subjected decedent HUNTER BERGNER to their wrongful conduct, depriving decedent HUNTER BERGNER of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent HUNTER BERGNER and others would be violated by their acts and/or omissions.

134.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF CORPUS and

1  DOES 11-20 as described above, Plaintiff sustained serious and permanent injuries and

2  is entitled to damages, penalties, costs, and attorneys' fees.

### SIXTH CLAIM FOR RELIEF

**Negligence – Wrongful Death**

**Plaintiff Estate of HUNTER BERGNER As Against All Defendants**

6   135.   Plaintiff realleges and incorporates herein by reference each of the

7  preceding paragraphs of this complaint, and any subsequent paragraphs.

8   136.   The present claim for relief is brought pursuant to Cal. Gov. Code §§

9  815.2 and 820. Under Section 820 of the Government Code, as public employees,

10  Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or

11  omissions to the same extent as private persons. Under Section 815.2 of the

12  Government Code, as public entities, Defendants COUNTY and SMSO are liable for

13  injuries caused by the acts or omissions of their employees committed within the course

14  and scope of their employment. This cause of action is not alleging direct liability

15  against Defendants COUNTY and SMSO, only vicarious liability. *See* Gov. Code, §

16  815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

17   137.   At all times, Defendants DOES 1-20 owed Plaintiff and decedent

18  HUNTER BERGNER the duty to act with due care in the execution and enforcement

19  of any right, law, or legal obligation.

20   138.   At all times, these Defendants owed Plaintiff and decedent HUNTER

21  BERGNER the duty to act with reasonable care.

22   139.   These general duties of reasonable care and due care owed to Plaintiff and

23  decedent HUNTER BERGNER by these Defendants include but are not limited to the

24  following specific obligations:

25   a.   To properly identify symptoms of suicide;

26   b.   To properly take precautions in housing and confining an inmate who has

27   symptoms of suicide;

28   c.   To house and confine a suicidal inmate in a housing cell free of suicide

1    hazards;

2    d.    To summon, or transport Decedent to, necessary and appropriate

3         emergency medical and mental health care;

4    e.    To refrain from unreasonably creating danger or increasing Decedent's

5         risk of harm;

6    f.    To use generally accepted law enforcement procedures and tactics that are

7         reasonable and appropriate for Decedent's status as a person in medical

8         and mental health crisis with serious medical and mental health needs;

9    g.    To conduct state mandated safety and welfare checks of inmates in the

10        custody of the COUNTY Jails;

11   h.    To refrain from abusing their authority granted them by law; and

12   i.    To refrain from violating Plaintiff' and Decedent's rights as guaranteed

13        by the United States and California Constitutions, as set forth above, and

14        as otherwise protected by law.

15   140.   Defendants DOES 1-20, through their acts and omissions, breached each

16   and every one of the aforementioned duties owed to Plaintiff and decedent HUNTER

17   BERGNER.

18   141.   Defendants COUNTY and SMSO are vicariously liable for the violations

19   of state law and conduct of their officers, deputies, employees, and agents, including

20   individual named defendants, under California Government Code § 815.2.

21   142.   As a direct and proximate result of these Defendants' negligence, Plaintiff

22   and decedent HUNTER BERGNER sustained injuries and damages, and against each

23   and every Defendant named in this cause of action in their individual capacities are

24   entitled to relief, including punitive damages against such individual Defendants.

25   ///

26   ///

27   ///

28   ///

**SEVENTH CLAIM FOR RELIEF**

**Negligence – Medical Malpractice**

**Plaintiff Estate of HUNTER BERGNER As Against All Defendants**

143.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

144.   The present claim for relief is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and SMSO are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and SMSO, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

145.   Decedent HUNTER BERGNER was under the care and treatment of Defendants DOES 1-20, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including MCF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when she suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and SMSO, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent HUNTER BERGNER to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee HUNTER

BERGNER.

146.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent HUNTER BERGNER emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent HUNTER BERGNER was provided.

147.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

148.   Defendants COUNTY and SMSO are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## EIGHTH CLAIM FOR RELIEF

### Violation of California Government Code § 845.6

### Plaintiff Estate of HUNTER BERGNER As Against All Defendants

149.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

150.   The present claim for relief is brought pursuant to Cal. Gov. Code §§§ 845.6, 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and SMSO are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and SMSO, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128. ///

151.   Decedent HUNTER BERGNER was in need of immediate medical care and treatment, and Defendants DOES 1-20 failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and SMSO, knowing and/or having reason to know of decedent HUNTER BERGNER's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

152.   Defendants COUNTY and SMSO are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

153.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent HUNTER BERGNER was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## NINTH CLAIM FOR RELIEF

### Violation of California Civil Code § 52.1

### (Tom Bane Act)

### Plaintiff Estate of HUNTER BERGNER As Against All Defendants

154.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

155.   The present claim for relief is brought pursuant to Civil Code § 52.1, Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and SMSO are liable for

injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and SMSO, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

156. Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

157. By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent HUNTER BERGNER was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated HUNTER BERGNER's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical and mental health needs while in custody as an inmate as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d. The right to emergency medical and mental health care as required by California Government Code §845.6.

///
///
///
///

158.    Defendants' violations of decedent HUNTER BERGNER's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[4] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of HUNTER BERGNER

159.    's rights as described above, Defendants violated HUNTER BERGNER's rights by the following conduct constituting threat, intimidation, or coercion:

a.    With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b.    With deliberate indifference to hazards that posed a risk to inmates and detainees, such as Decedent;

c.    Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical and mental health needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to San Mateo County jail detainees and inmates;

e.    Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

---

[4] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

f.  Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

160.  The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent HUNTER BERGNER's rights, or to any legitimate and lawful jail or law enforcement activity.

161.  Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

162.  Further, each Defendant violated decedent HUNTER BERGNER's rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

163.  Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

164.  As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent HUNTER BERGNER's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

///

///

///

///

**TENTH CLAIM FOR RELIEF**

**Declaratory Relief**

**(28 U.S.C § 2201)**

**Plaintiffs As Against All Defendants**

165.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

166.    There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

167.    Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.    Wrongful death of HUNTER BERGNER, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.    Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.    HUNTER BERGNER's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.    Violation of HUNTER BERGNER's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.    HUNTER BERGNER's loss of life, pursuant to federal civil rights law;

F.    HUNTER BERGNER's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

///

**COMPLAINT FOR DAMAGES**

G.  General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.  Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.  Punitive damages as to individual defendants;

J.  Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.  A multiplier of damages, including treble damages, under the Tom Bane Act;

L.  Penalties under the Tom Bane Act;

M.  Interest; and

N.  All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: November 29, 2024        **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF HUNTER BERGNER, et al.

Dated: November 29, 2024        **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                **A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF HUNTER BERGNER, et al.

**COMPLAINT FOR DAMAGES**

## **DEMAND FOR JURY TRIAL**

Plaintiffs ESTATE OF HUNTER BERGNER, by and through successors in interest, Patricia Colet, individually; L.B.1, individually; L.B.2, individually; S.B., individually, hereby make a demand for a jury trial in this action.

Dated: November 29, 2024     **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_

Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF HUNTER BERGNER, et al.

Dated: November 29, 2024     **LAW OFFICES OF CHRISTIAN CONTRERAS**
                         **A PROFESSIONAL LAW CORPORATION**

By: _Christian Contreras_

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF HUNTER BERGNER, et al.