IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF HUNTER BERGNER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAN MATEO COUNTY SHERIFF'S OFFICE, et al., <br><br> Defendants. | Case No. 24-cv-08596-CRB <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Plaintiffs, the estate of decedent Hunter Bergner and his surviving relatives, sue San Mateo County, the County Sheriff's Office, the Sheriff, and 20 unnamed Doe defendants for the events leading to the death by suicide of Bergner. Defendants move to dismiss for failure to state a claim. The Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b) and grants Defendants' motion without prejudice except as provided below.

I.   **BACKGROUND**

The decedent, Hunter Bergner, was incarcerated at Maguire Correctional Facility in March 2024 following his conviction on a "minor firearms criminal charge." Am. Compl. (dkt. 35) ¶¶ 1, 35. Bergner was "despondent, in despair and hopeless" and "expressed hopelessness and despair to [unidentified] custody and medical staff." Id. ¶¶ 33, 36. He also "expressed concerns about his mental health" to his girlfriend in a video call at 10 a.m. on March 15, 2024, "mentioning that he was experiencing anxiety and seeing a therapist." Id. ¶ 32. Later that day, at 2:05 p.m. and 3:03 p.m., "correctional officers conducted cursory security checks … but did not intervene despite [unidentified] clear

warning signs." Id. ¶ 37. Bergner's cellmate found him hanging from a light fixture in his cell at 3:16 p.m. and alerted staff, but by that time he had already died. Id. ¶¶ 30–31, 37.

Plaintiffs Patricia Colet (Bergner's wife) and L.B.1, L.B.2, and S.B. (his children) filed this lawsuit in their own capacity and on behalf of Bergner's estate. Id. ¶¶ 16–18. They sue San Mateo County, the San Mateo County Sheriff's Office, Sheriff Christina Corpus, and 20 unnamed defendants (named as Does 1–20). Id. ¶¶ 19–24. The Doe defendants are alleged to be "individual law enforcement personnel and medical personnel" of the Sheriff's Office who "were involved in some manner and legally responsible for the wrongful acts and conduct alleged." Id. ¶ 23. Does 11–20 are alleged to be "managerial, supervisorial, training, and/or policymaking employees" of the County. Id. ¶ 24.

Plaintiffs bring ten claims against Defendants:

- Claim 1: Against Does 1–20, a § 1983 claim by Bergner's estate for failure to protect from harm. Id. ¶¶ 59–81.
- Claim 2: Against Does 1–20, a § 1983 claim by Bergner's estate for failure to provide medical care. Id. ¶¶ 82–93.
- Claim 3: Against Does 1–20, a § 1983 claim by Bergner's wife and children for deprivation of the right to a familial relationship. Id. ¶¶ 94–108.
- Claim 4: Against the County and Sheriff's Office, a § 1983 claim by Bergner's estate for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). Id. ¶¶ 109–22.
- Claim 5: Against Sheriff Corpus and Does 11–20, a § 1983 claim by Bergner's estate for supervisory liability. Id. ¶¶ 123–33.
- Claim 6: Against all Defendants, a negligence claim by Bergner's estate. Id. ¶¶ 134–41.
- Claim 7: Against all Defendants, a medical malpractice claim by Bergner's estate. Id. ¶¶ 142–47.
- Claim 8: Against all Defendants, a claim under California Government Code § 845.6 by Bergner's estate. Id. ¶¶ 148–52.
- Claim 9: Against all Defendants, a claim for a violation of the Bane Act, Cal. Civ. Code § 52.1, by Bergner's estate. Id. ¶¶ 153–62.
- Claim 10: Against all Defendants, a claim for declaratory relief that Defendants "are in violation of federal law" by all Plaintiffs. Id. ¶¶ 163–64.

Defendants move to dismiss each cause of action for failure to state a claim upon which relief can be granted and to dismiss the Doe defendants from the lawsuit across the board. MTD (dkt. 28-1); Sheriff's MTD (dkt. 36).[1]

## II.   LEGAL STANDARD

To state a claim upon which relief can be granted, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court "must take all of the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

## III.   DISCUSSION

Defendants first argue that the Doe Defendants should be dismissed from the case because Plaintiffs do not allege specific facts against any particular Doe Defendant. MTD at 8–9. They then argue that, as to each specific cause of action, Plaintiffs have failed to state a claim upon which relief can be granted. Id. at 9–26. The Court takes these arguments in turn.

### A.   Doe Defendants

Defendants move to dismiss the Doe Defendants because "[a]ll of the allegations [against] the Doe Defendants [are] pled in general terms and in a conclusory manner." Id. at 8. According to Defendants, the complaint lacks any "specific allegations about what any of these Doe Defendants actually did, when they did it, [or] why they did it." Id. at 9. That, Defendants argue, warrants dismissal.

"As a general rule, the use of Doe pleading is disfavored in federal court." Turner v. County of Los Angeles, 18 F. App'x 592, 596 (9th Cir. 2001). That said, "where the

---

[1] The Sheriff's motion to dismiss, which was filed over a month after the County's motion to dismiss, largely mirrors their motion. Accordingly, the Court treats the County's motion—which Plaintiffs opposed and which is fully briefed—as the lead motion.

1    identity of the alleged defendant is not known prior to the filing of a complaint, the
2    plaintiff should be given an opportunity through discovery to identify the unknown
3    defendants, unless it is clear that discovery would not uncover the identities, or that the
4    complaint would be dismissed on other grounds." Wakefield v. Thompson, 177 F.3d
5    1160, 1163 (9th Cir. 1999) (cleaned up) (citation omitted). Accordingly, Plaintiffs argue
6    that it would be "premature" to dismiss the Doe Defendants for nothing more than their
7    failure to "identify [them] by name" or their "group pleading." Opp. (dkt. 30) at 10 (citing
8    Est. of Urias v. Imperial County, No. 24-cv-1050-MMA, 2024 WL 4683295, at *2 (S.D.
9    Cal. Nov. 5, 2024)).

    Plaintiffs misunderstand the problem with their Doe allegations. It is not that the Doe Defendants should be dismissed from the case for Plaintiffs' mere failure to identify them by name, or even for their group pleading of "Does 1–20" as opposed to "Doe 1, Doe 2, etc." Their Doe allegations fail because Plaintiffs do not allege any facts (as opposed to legal conclusions) as to the Doe Defendants' personal involvement with the events of this case. As the below excerpts from Plaintiffs' amended complaint show, Plaintiffs' pleading deficiency is readily apparent in every claim they assert against the Doe Defendants:

- Count 1: "Defendants DOES 1–20, and each of them, made various intentional decisions regarding HUNTER BERGNER's condition when he was confined in the COUNTY jails, including MCF." Am. Compl. ¶ 62. "Instead of ensuring that HUNTER BERGNER could not self-mutilate or self-harm, Defendants did not take any reasonable available measures to abate or reduce the risks HUNTER BERGNER faced." Id, ¶ 63. "The conduct of Defendants DOES 1–20, and each of them, was objectively unreasonable and deliberately indifferent given that they were aware of the consequences of HUNTER BERGNER's placement and the high risk period for suicide but proceeded with their course of conduct." Id. ¶ 67. "Defendants DOES 1–20's failure to conduct the required safety check of decedent HUNTER BERGNER's holding cell on the date of his death evidences deliberate indifference to the risk of harm to decedent HUNTER BERGNER." Id. ¶ 75.

- Count 2: "Defendants DOES 1–20, as alleged herein, including but not limited to their failure to provide decedent HUNTER BERGNER with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care

4

and life saving care to persons in their custody, constituted deliberate indifference to HUNTER BERGNER's serious medical and mental health needs, health, and safety." Id. ¶ 86.

- Count 3: "The aforementioned acts and/or omissions of Defendants DOES 1–20 in being deliberately indifferent to decedent HUNTER BERGNER's protection, safety, and serious medical and mental health needs, violating decedent HUNTER BERGNER's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of HUNTER BERGNER deprived Patricia Colet, L.B.1, L.B.2, and S.B. of their liberty interests in the familial relationship." Id. ¶ 96.

- Count 5: "Defendants … DOES 11–20 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at MCF and the rights to the serious medical and mental health needs of decedent HUNTER BERGNER. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent HUNTER BERGNER of rights, … ." Id. ¶ 127.

- Count 6: Plaintiffs allege that the Doe Defendants breached duties of care including "[t]o properly identify symptoms of suicide," "[t]o house and confine a suicidal inmate in a housing cell free of suicide hazards," and "[t]o use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs." Id. ¶¶ 138–39.

- Count 7: "Decedent HUNTER BERGNER was under the care and treatment of Defendants DOES 1–20, all of whom were COUNTY medical staff assigned to the COUNTY jails, including MCF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when []he suffered a medical emergency." Id. ¶ 144.

- Count 8: "Decedent HUNTER BERGNER was in need of immediate medical care and treatment, and Defendants DOES 1–20 failed to take reasonable action to summon immediate medical care and treatment." Id. ¶ 150.

- Count 9: "Defendants, each acting in concert/conspiracy, as described above, while decedent HUNTER BERGNER was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated HUNTER BERGNER's rights … to be free from objectively unreasonable treatment and deliberate indifference … , for the familial association to be free from government interference … , to enjoy and defend life and liberty … , [and] to emergency medical and mental health care." Id. ¶ 156.

For each and every claim, Plaintiffs fail to "allege specific facts showing how each particular doe defendant violated the plaintiff's rights," and Plaintiffs' allegations "are devoid of any factual support for how each of these Does personally participated in the events leading to" Bergner's death. Estate of Urias, 2024 WL 4683295, at *4 (citation omitted). Plaintiffs' reliance on conclusory allegations of liability, devoid from any factual support, would fail to state a claim under any standard. See Iqbal, 556 U.S. at 678 (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). But as to the Doe defendants, Plaintiffs' allegations do not identify with any specificity who they are or what role they are alleged to have had in the events leading to Bergner's death. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."). The Doe Defendants are apparently "all … medical staff," Am. Compl. ¶ 144, but also "law enforcement personnel," id. ¶ 23, who control inmate housing decisions, id. ¶ 138, and conduct safety checks, id. ¶ 75. And ten Doe Defendants are apparently supervisors, but Plaintiffs never explain what category or categories of employees they supervise, or what authority they have to set policies or practices. Though a plaintiff is entitled to plead causes of action in the alternative, a plaintiff cannot create a chimera of a Doe defendant—especially not without any factual allegations in support. If Plaintiffs want to sue defendants whose names are yet unknown, they must identify a specific factual basis for doing so.

Accordingly, the Court dismisses without prejudice all allegations against the Doe Defendants in this case. Plaintiffs may amend their complaint to allege specific facts that would demonstrate Doe Defendants' personal involvement.

### B.     The County, Sheriff's Office, and Sheriff

Dismissal of the Doe Defendants eliminates any need to discuss Counts 1 through 3, which were pleaded only against the Doe Defendants. But the County, Sheriff's Office, and Sheriff can still be liable on various theories, including municipal liability, supervisory liability, and vicarious liability under state law. See, e.g., Monell, 436 U.S. at 690; Hansen

6

1  v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Cal. Gov't Code §§ 815.2, 820.  The Court
2  addresses the remaining causes of action in turn.

### 1. Count 4: Municipal Liability

Plaintiffs allege that the County and the Sheriff's Office should be held liable under the doctrine of Monell v. Department of Social Services, which permits municipal liability where an official policy or custom causes a constitutional tort.  436 U.S. at 690.  As an initial matter, the Court rejects Defendants' argument that the Sheriff's Office cannot be held liable under Monell; Monell plainly applies to both "municipalities and other local government units."  Id. at 690–91 (emphasis added); see also, e.g., Mackie v. County of Santa Cruz, 444 F. Supp. 3d 1094, 1113 (N.D. Cal. 2020) (denying motion to dismiss Monell claim against a sheriff's office).

Plaintiffs primarily rely on a custom or practice, rather than an official policy, as the basis for municipal liability, so they "must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted).  Municipal liability cannot "be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Id.  And a plaintiff alleging municipal liability under a custom or practice theory "must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [others].'"  Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th Cir. 2016) (quoting City of Canton v. Harris, 489 U.S. 378, 392 (1989)).

As support for their municipal liability claim, Plaintiffs point to four inmates in San Mateo County jails who died in custody since 2023.  One of those inmates, Ronald Simmons, died by suicide while in prison; jail staff had known that he "had been suicidal for months, had a prior hanging attempt … , and had expressed intent to kill himself."  Am. Compl. ¶ 120(c).  The remaining inmates died because of drug use, id. ¶ 120(a), a preexisting condition of glioblastoma, id. ¶ 120(b), and opioid withdrawal, id. ¶ 120(d).

7

1    Plaintiffs also identify one other inmate from 2020 who died by suicide while in custody,
2    as well as an inmate from 2019 who was "found unresponsive in his cell." Id. ¶ 121.
3    Plaintiffs argue that these events reflect a custom or practice of "indifference to mental
4    health care and [] failure to adequately monitor the condition of inmates." Opp. at 15.

5    That is too wide a net to cast for a municipal liability claim based on custom or
6    practice. For one, based on Plaintiffs' descriptions of these incidents in their complaint,
7    only Simmons's case reflects an "indifference to mental health care." Plaintiffs do not
8    allege that, in the other suicide, jail staff knew of and disregarded any relevant warning
9    signs. Nor do their other examples (reflecting drug use, glioblastoma, opioid withdrawal,
10   and an unidentified cause of death) implicate mental health care. The other, related
11   problem with Plaintiffs' characterization is that the kind of monitoring required for mental
12   health conditions generally, and concerns about self-harm or suicide in particular, is not
13   necessarily the same as the kind of monitoring required for physical health conditions.
14   Accordingly, Plaintiffs have failed to establish a sufficiently entrenched municipal custom
15   or practice that caused Bergner's death.

16   Plaintiffs also seem to assert that the Sheriff (and the now-dismissed supervisor
17   Does) ratified underlying constitutional violations. See Am. Compl. ¶¶ 117–18. To be
18   sure, a municipality may face liability if an official with final policy-making authority
19   ratifies a subordinate's unconstitutional conduct. Gillette v. Delmore, 979 F.2d 1342,
20   1346–47 (9th Cir. 1992). But Plaintiffs allege no facts surrounding any supposed
21   ratification—for instance, how the Sheriff could or would have been aware of the Doe
22   Defendants' alleged unconstitutional actions with respect to Bergner. Thus, Plaintiffs'
23   ratification theory of municipal liability fails as well.

### 2. Count 5: Supervisory Liability

25   Supervisory liability under § 1983 is narrowly limited to situations where a plaintiff
26   can show that the supervisor "set[] in motion a series of acts by others," Redman v. County
27   of San Diego, 942 F.2d 1435, 1447 (9th Cir. 1991) (citation omitted), abrogated on other
28   grounds by Farmer v. Brennan, 511 U.S. 825 (1994), or "knowingly refused to terminate a

series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Dubner v. City & County of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001). Plaintiffs make no factual allegations whatsoever regarding actions taken by Sheriff Corpus or actions that Sheriff Corpus knew or should have known about that led in any way to Bergner's death. See, e.g., Am. Compl. ¶¶ 129 (alleging in a conclusory fashion that Sheriff Corpus "made a deliberate choice to endorse such conduct and decisions" that led to Bergner's death). Thus, Plaintiffs' supervisory liability claim fails as against Sheriff Corpus.

### 3.     Count 6: Negligence, Wrongful Death

To state a wrongful death claim based on negligence under California law, Plaintiffs must show that a defendant's wrongful act or neglect caused the decedent's death. Quiroz v. Seventh Ave. Ctr., 140 Cal. App. 4th 1256, 1264 (2006). Plaintiffs fail to allege facts that would establish the existence of either duty or causation.

As far as Plaintiffs' factual allegations are concerned—as opposed to their conclusory legal allegations that Defendants owed Bergner various duties all lumped together under the tagline "reasonable care"—some unspecified jail staff knew that he had expressed "hopelessness" and "despair," and two jail employees had conducted "cursory security checks" shortly before his death. Am. Compl. ¶¶ 33, 36–37. None of this establishes that anyone at the jail was aware that Bergner was experiencing suicidal ideations, and so Plaintiffs' proposed duties (for example, a duty to "house and confine a suicidal inmate in a housing cell free of suicide hazards," id. ¶ 138(c)) beg the question whether anyone knew he was suicidal. Plaintiffs do not point to any legal authority that would impose on Defendants an affirmative duty to identify every potentially suicidal inmate and treat them accordingly; to the contrary, existing law appears to require only that jail staff respond to known risks of suicide. See, e.g., Campbell v. Herrera, No. 24-3296, 2025 WL 1525331, at *3 (9th Cir. May 29, 2025).

As for cause, Plaintiffs do not adequately allege that Defendants were a proximate cause of Bergner's death. As the Ninth Circuit has explained, a defendant's negligent acts

cannot serve as the basis for a wrongful death suit if they cause only "a mental condition in which the injured person is able to realize the nature of the act of suicide and has the power to control it if he so desires." Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009). Defendants, who at most could be said to have caused Bergner's death by their inaction, certainly did not cause a condition in Bergner where he could not "control the impulse to commit suicide." Id. Thus, Bergner's own actions are an intervening cause of his death, and Defendants cannot be held liable for negligence.

#### 4. Count 7: Negligence, Medical Malpractice

Plaintiffs' claims for medical malpractice against the County, the Sheriff's Office, and the Sheriff are all based on supervisory liability, as Plaintiff does not allege that any of these entities are themselves medical providers. But "the State [can]not be held directly liable for medical malpractice." Nelson v. State, 139 Cal. App. 3d 72, 78 (1982). Accordingly, the Court must dismiss the medical malpractice claims against the County, Sheriff's Office, and Sheriff. These dismissals are with prejudice as the claims are futile.

#### 5. Count 8: Government Code § 845.6

Plaintiffs allege that Defendants are liable under Government Code § 845.6, which imposes liability for failure to provide medical care for a prisoner if a public employee "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." As explained above, Plaintiffs' allegations as to what Defendants knew or should have known are too thin to give rise to liability. All that anyone at the jail knew before Bergner died was that he had expressed "hopelessness" and "despair," neither of which necessitates immediate medical care. Am. Compl. ¶¶ 33, 36. (And in any case, it is entirely unclear who at the jail knew of this, or whether they are a Doe defendant or a third party.) It is several leaps from hopelessness or despair, which are surely common enough reactions to a conviction, to suicidal ideations that demand an immediate response. Because Plaintiffs have not alleged facts that would establish any Defendant's actual or constructive knowledge of the need for immediate medical care, their section 845.6 claim fails.

10

### 6.  Count 9: Bane Act

Plaintiffs rest their Bane Act claim on the "same allegation of deliberate indifference" that forms the basis of their other claims.  Opp. at 19.  Because those claims fail, so does their Bane Act claim.  And in any case, Plaintiff has alleged no facts that would establish the specific intent required for a Bane Act claim.  See Rodriguez v. County of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018).

### 7.  Count 10: Declaratory Relief

Similarly, Plaintiffs' declaratory relief claim is premised on their § 1983 claims, which fail for the reasons above.  Thus, Plaintiffs have not satisfactorily alleged a claim for declaratory relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss in full.  With respect to all but the medical malpractice claims against the County, Sheriff's Office, Sheriff, and Supervisor Does, the Court grants leave to amend within 28 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: June 18, 2025

CHARLES R. BREYER
United States District Judge

11